**M. S. WALKER, INC., Plaintiff, Appellant,**

v.

**The TRAVELERS INDEMNITY COM-PANY, Defendant, Appellee.**

**No. 71–1400.**

United States Court of Appeals, First Circuit.

Argued Nov. 6, 1972.

Decided Jan. 3, 1973.

Kenneth H. Soble, Boston, Mass., with whom Martin B. Shulkin and Soble, Soble & Shulkin, Boston, Mass., were on brief, for appellant.

Robert J. Sherer, Boston, Mass., with whom Roche, Carens & DeGiacomo, Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

CAMPBELL, Circuit Judge.

This is a diversity action removed from the Massachusetts state court, in which Walker, a distiller, rectifier and wholesaler of alcoholic beverages, seeks to recover $151,386 under the blanket crime coverage of an insurance policy is-

sued by Travelers. Walker allegedly lost that sum as a result of thefts of inventory by its own employees. Travelers conceded, and the district court found, liability under the policy of $25,000. For reasons hereinafter stated, we reverse in part and remand for further findings by the district court on the issue of Walker's recovery.

■ We find no merit in Walker's first contention that the district court erred in refusing to hold Travelers liable under more favorable crime coverage (so-called "Form B") than that included in the actual policy issued to it by Travelers. It was not established that the agent, Swartz, through whom Walker purchased the insurance was a general agent for Travelers; thus regardless of Walker's instructions to Swartz or Swartz's oral representations to Walker personnel, Travelers was not bound. Century Indemnity Company v. Jameson, 333 Mass. 503, 131 N.E.2d 767 (1956); Sheridan v. Massachusetts Fire and Marine Insurance Company, 233 Mass. 479, 124 N.E. 249 (1913). The policy delivered to Walker, as indeed Swartz in a subsequent letter to Walker substantially indicated, provided Form A coverage.

■ More serious is Walker's contention that six excluded ex-employees' statements should have been admitted. These were signed statements made by then Walker employees to a private investigator, in the presence of a state police lieutenant, detailing thefts of cases of liquor at the Walker premises, and admitting complicity. The investigator testified to obtaining them in February and March, 1968. He had commenced his investigation in early February. They covered thefts during a period from 1966 through early 1968. One of the employees, Farris, voluntarily appeared at the trial but declined to testify on grounds of self-incrimination. The court accepted his refusal to do so and can be said from the record to have sustained his claim of privilege.

A Boston constable, called by Walker, testified to having been requested by Walker's attorney to serve subpoenas upon four of the remaining five ex-employees. The constable testified to their names, to having attempted to make service upon each, to having been unable to locate any of the four witnesses named, and to having made a "diligent return upon each service." He was then excused after Travelers' attorney stated that he had no questions.

There was no evidence of efforts to contact the sixth employee, David Dalrymple, whose statement was offered. He did not appear at the trial.

When the six statements were offered, no particular theory of admissibility was advanced by Walker's attorney. Travelers' attorney objected generally, they were marked for identification, and the court received them, apparently provisionally and subject to further ruling. Thereafter, in its opinion, the court characterized them as "clearly hearsay", rejected Walker's contentions that they were "res gestae", and apparently declined to admit them—although stating that the statements, if admitted, would not establish that plaintiff suffered separate loss.

We agree that the statements were not admissible under the theory advanced. However, we believe that all of them (except that of Dalrymple, whose absence was not accounted for) were admissible under the hearsay exception admitting the prior statements of unavailable witnesses which, when made, were against the declarant's interest. See, generally, 5 Wigmore On Evidence, §§ 1401–1418, 1455–1477 (3rd ed. 1940); McCormick On Evidence, 670–679 (2nd ed. 1972); W. B. Leach & P. J. Liacos, Handbook of Massachusetts Evidence, 231–233 (4th ed. 1967); Rule 804, Rules of Evidence for United States Courts and Magistrates (effective July 1, 1973), 56 F.R.D. 183, 320.

Under the new federal rules of evidence there would be no question of admissibility; statements against interest may be received if the declarant is unavailable for any valid reason; and they

need not be against immediate pecuniary or proprietary interest. The rules dispense with the anachronistic requirement that unavailability be due to death; and they no longer exclude confessions to a crime. *See* Holmes, J. dissenting in Donnelly v. United States, 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820 (1913).

Under the new rules, Walker's inability to secure the presence of four of the employees by process, and the court's ruling that the one witness who appeared was exempted from testifying on the ground of privilege, would be sufficient to establish unavailability. That the statements subjected the declarants to civil and criminal liability when made would establish they were "against interest."

Admittedly the new rules do not take effect until July; and if we turn to Massachusetts evidentiary rules, the situation is less clear. *See* W. B. Leach & P. J. Liacos, Handbook of Massachusetts Evidence 231 (4th ed. 1967). The Massachusetts cases cited by Leach & Liacos, the most recent of which was decided forty years ago, and most of which are much older, reflect the common law restrictions. However, the authors state, at p. 231, "The trend in other jurisdictions is to treat any valid basis of unavailability as sufficient. E. g. inability to locate the declarant upon diligent search, or a claim of privilege . . ." They conclude that unavailability should "include any valid showing thereof" (p. 233). Further, even under older cases, the present declarants' admissions of theft of Walker's inventory could be considered against their immediate pecuniary interest, showing a liability to make financial restitution to Walker.

Given the unanimity of the leading authorities in the field of evidence favoring admissibility, we doubt that a Massachusetts court would today rule to exclude the statements. Moreover, we are guided by Rule 43(a) towards "the statute or rule which favors the reception of the evidence"—language which, while not an invitation to license, suggests a policy consistent with our present ruling.

Accordingly, we hold that it was error to exclude any of the statements, except that of David Dalrymple. As we are sending the case back for a new trial limited to the issue of the amount of recovery, we further rule that if a sufficient predicate can be laid for Dalrymple's unavailability, or if, upon his being actually called as a witness, he declines upon a valid claim of privilege to testify, his statement may also be admitted. (We are unwilling to accept as sufficient the mere assumption that the declarant would invoke the privilege.)

As the statements were admissible, we believe the district court should have a further opportunity (giving the statements such weight as it determines and with such other evidence as either party wishes to introduce relative to Walker's alleged losses and the appropriate amount of its recovery) to construe and apply the provisions and limitations of the policy.

Since there must be a new trial and the district court's opinion fails to quote the policy (and the company's brief misquotes it), we will comment briefly upon its terms.

The so-called policy limit for crime (Section V), is $25,000. (Section V, Item 1). Provision ND 23 reads in part,

"8. Total Limit of Liability—Payment of loss under Section V shall not reduce the liability of The Travelers under Section V for other losses; provided, however, that the total liability of The Travelers under Section V on account of: (a) all loss incidental to an actual or attempted fraudulent, dishonest or criminal act or series of related acts, whether committed by one or more persons, at the premises in which no employee is concerned or implicated or in which there is no forgery or alteration of an instrument insured under Coverage R, or (b) all

loss, other than specified in (a) preceding, caused by acts or omissions of any person (whether one of the employees or not) or acts or omissions in which such person is concerned or implicated,

is limited to the sum stated in Item 1 of the Section V Declarations . . . .

"Regardless of the number of years Section V shall continue in force and the number of premiums which shall be payable or paid, The Travelers' total limit of liability shall not be cumulative from year to year or period to period."

These provisions must be read against the basic "Insuring Agreements." The first is

"I. Coverage N—Employee Dishonesty—Loss of money, securities and other property which the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of the employees, acting alone or in collusion with others."

In addition, Paragraphs II and III cover loss occasioned by non-employees. These are limited to "money and securities," and omit the phrase "and other property." *

We find nothing in the policy about "occurrences," or certain other language referred to by both parties.

 Since there may be different evidence on the new trial, and the parties have failed to consider the actual policy language, we will refrain from further comment at this time, except to say that we do not understand the procedure adopted at trial of simply asking company witnesses what the policy meant. Absent exceptional circumstance one must look to the policy itself, not to witnesses.

Reversed and remanded for a new trial limited to Walker's recovery under the policy.

---

* By quoting these particular provisions, we do not exclude the possibility that other language in the policy is pertinent to this question.